KAREN LeCRAFT HENDERSON, Circuit Judge,
dissenting:
I dissent from the majority’s holding that the challenged provision of the Radio Broadcasting Preservation Act (Act)— withholding future low power FM (LPFM) licenses from those who have illegally engaged in LPFM broadcasting in the past— falls short of the “something more than minimum rationality”standard adopted in News America Publishing, Inc. v. FCC, 844 F.2d 800 (D.C.Cir.1988). Quoting News America, the majority charges that the Act’s license restriction is so “poorly aimed at maximizing future compliance with broadcast laws and regulations as to ‘raise[] a suspicion’ that perhaps Congress’s true objective was not to increase regulatory compliance, but to penalize pirate microbroadcasters’ ‘message.’ ” Maj. Op. at 1333 (quoting 844 F.2d at 805). This case, however, is nothing like News America.
In News America the court overturned a funding resolution that barred the FCC from using appropriated funds “ ‘to extend the time period of current grants of temporary waivers to achieve compliance with such rules.’” 844 F.2d at 802 (quoting Pub.L. No. 100-202, 101 Stat. 1329, 34 (1987)). The court found the provision “astonishingly underinclusive” for two reasons. First, it did not prohibit extension of waivers granted after its enactment but only of those already in existence. Second, it forbade only extensions of existing waivers and not the granting of new waivers. In fact, because of its narrow focus the restriction affected only a single party, News America Publishing, Inc., a corporation owned by Rupert Murdoch, striking him, in the court’s words, “with the precision of a laser beam.” 844 F.2d at 814. By contrast, the license restriction here applies to the entire class of those who as of the time of their license applications have unlawfully engaged in LPFM broadcasting.[1] Further, the restriction substan *1335 tially furthers the plain intent of the Congress which believed that “the operation of an unlicensed station demonstrates a lack of commitment to follow the basic rules and regulations which are essential to having a broadcast service that serves the public, and those individuals or groups should not be permitted to receive licenses in the LPFM service.” H.R.Rep. No. 506 at 8 (2000). What could be more reasonable or logical than to suspect that those who ignored the Commission’s LPFM broadcast regulations in the past are likely to do so in the future and therefore to head them off. The majority claims this class is underinclusive because it excludes a host of other scofflaws such as “civil wrongdoers, felons, and even inveterate regulatory violators other than pirates.” Maj. Op. at 1331. As the majority acknowledges, however, “ ‘Congress ordinarily need not address a perceived problem- ... all at once.’ ” Maj. Op. at 1332 (quoting News America, 844 F.2d at 815.).[2] It is no surprise that in legislation addressing LPFM licensing the Congress began with known violators of LPFM regulations. In any event, given that the class’s members here are many and unidentified, see supra note 1, I am at a loss to understand how we can infer the Congress intended to punish any particular “message” the way the senators mentioned in News America targeted Murdoch’s message.[3]

. This class includes persons who broadcast illegally after the Act's passage as well as those who had already done so before enactment. It is therefore not a "closed” class as was the case in News America. See 844 F.2d at 810 & n. 13 (noting that challenged provision "impinges on a closed class” because "Murdoch is not only the sole current member of the class, but is the sole parly that can ever be a member”).

. As the majority points out, the court in News America noted other courts’ rejection of the “one-bite-at-a-time explanation for rules affecting important First Amendment values.” News America, 844 F.2d at 815, quoted in Maj. Op. at 1332. Judging from the examples cited in News America, the court meant only that a proffered governmental interest will not suffice if the challenged statute does not reasonably serve the interest, that is, if the statute is underinclusive or overinclusive or both. See FCC v. League of Women Voters, 468 U.S. 364, 396, 104 S.Ct. 3106, 3126, 82 L.Ed.2d 278 (1984) (striking down statute of "patent overinclusiveness and underinclusiveness” because it "clearly 'provide[d] only ineffective or remote support for the government’s purpose.' ”) (quoting Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980)); Community-Serv. Broadcasting v. FCC, 593 F.2d 1102 (D.C.Cir. 1978) (rejecting statute that ”[a]t best ... serves as an overly restrictive means” of achieving asserted purpose) (en banc). I see no reason the legislature cannot permissibly tackle a single part of a perceived problem (including one touching on the First Amendment) through a statute, such as the one here, which is neither overinclusive nor underinclu-sive.

. As the News America court recounted, Murdoch was thoroughly excoriated in the Senate shortly after the Act was passed. See News America, 844 F.2d at 807-10.